Okay, our next case is Laswell v. Walgreen, 5-1087, Kristina Cooksey. Good morning. Good evening. Thank you. May it please the court, my name is Kristina Cooksey and I represent the appellant Amy Laswell Scott. This is an appeal of a judgment following a bench trial and the issue here is whether the decision in favor of the defendant was either incorrect as a matter of law or whether it is against the manifest rate of the evidence. This follows a case claiming that Ms. Dodd was terminated for exercising her rights under the Illinois Workers' Compensation Act. We had to prove three things at trial and two were undisputed. One, that she was an employee and two, that she exercised her rights under the act. The third element that her discharge was causally related to the filing of a workers' compensation claim was the disputed element at trial. Ms. Dodd was injured at work on March 22, 2004. She told her supervisor what happened and left early that day. She was set to see the workers' compensation company doctor the next day and was taken off work for four days to get physical therapy for her injuries. Ultimately, even those absences that were directed by the company doctor were used as a basis to terminate her. She saw two doctors after that of her own choosing, which is her right under the Illinois Workers' Compensation Act. She saw Dr. Charles Neal and Dr. David Kennedy. Both doctors diagnosed her with cervical radiculopathy as the result of her work injury and took her off work using company forms provided by Walgreens saying that the injury was work-related and these absences were due to that. Now, that's a medical opinion, not a legal opinion. Correct. They didn't say it's covered under the Workmen's Compensation Act. They said work-related or occurred at work? Correct. They were given a form, presumably by Walgreens. It has their stationery. Asked to fill out the form, you know, as to her status, and they checked on there that this was a work-related injury. That was their medical. Medically. They did also give testimony in the legal case that, to the same, on the same basis. When they were questioned, they said that they... They never gave an opinion that it was covered under the Workmen's Compensation Act. They gave the opinion that her condition and her time off work was causally connected to her work injury. As far as being covered under the Workers' Compensation Act, that decision was made by Respondent's Insurance Carrier well before Ms. Dodd even had a chance to file her case or get it heard by the Workers' Compensation Commission. The Respondent in this, or the Defendant, I'm sorry, I argue about 20 of these Workers' Compensation Commission months, so I'm used to saying Respondent. The Defendant, Walgreens, decided before she returned to work on May 6, 2004, that her case wasn't covered by the Illinois Workers' Compensation Act. They did so unilaterally before anything was ever adjudicated by the Act. And the testimony of the Human Resources Generalist at trial was, as soon as they made that internal decision that it was not a valid claim under the Workers' Compensation Act and denied her claim, that is when the decision to terminate came. Is it necessary, one way or the other, to prove your case that it was covered under the Act? I don't believe so. It has to be causally related to her exercise of rights. That's the law. Causally related. There's no dispute that she was exercising her rights. She had claimed time off work. She had claimed medical treatment. She had actually received treatment through the company by the company doctor. So the exercise of rights was clear and admitted to a trial. They, according to their internal procedures, looked at that exercise of rights and decided, is that valid or not? They decided it was not valid before that could ever be adjudicated in front of the Illinois Workers' Compensation Commission. So that termination was based upon their internal regulations, based on their internal decisions, before that issue was ever presented to the Illinois Workers' Compensation Commission. And in that case, in this case, that termination then was motivated by her exercise of rights. Now, what ultimately happened in this case is that her case was taken to trial. It was completely tried before the arbitrator. And the case was settled for everything she asked for in front of the arbitrator. Now, what the defendant wants us to infer here is that we settled the case on a disputed basis. Therefore, we can't say it was a valid claim. The law for respiratory discharge doesn't say that it depends on whether it's a valid claim. But here we have a woman who's been terminated. She's off work. She's hurt. She's out money. And there's been a trial. What does she have to do? She has to wait for the decision of the arbitrator. She has to wait 30 days for an appeal. An appeal in front of the industrial commission typically runs 18 months. So because that case was ultimately settled, presumably due to the financial need of the client to get that money and get that compensation. Does the settlement document say that her claim was covered under the Workman's Compensation Act? It was settled under the Worker's Compensation Act. Does it say it was covered, her claim was covered, or did they still dispute coverage? It is a disputed basis, no. Now, at that point, I guess your client may have had the option of including in the settlement document that it was covered under Workman's Comp. But chose not to include that in the settlement papers. Well, at that point, the client decided to put an end to her comp case so that she could receive money under the Worker's Compensation Act. She was paid every benefit that she was entitled to. Is that what she testified to in trial? Worker's Compensation Act. Is that what she testified to? I believe so, but I haven't read her record. Okay, that's all right. I apologize for that. But no, yes, that was negotiated language and it was settled on a disputed basis. I don't think, however, that that is the crux of the issue in this case. She was terminated well before she could bring her case before the commission to have it heard. She did bring the case before the commission to have it heard. And after that, respondent paid her all the benefits that she was asking for at trial. She had a valid claim, or at least a claim, of exercising rights under the Worker's Compensation Act. And at that point, I don't believe employers in the state of Illinois can decide whether or not to continue to employ an employee based on their perception of the validity of the claim. And I think that there's some cases that back up that legal proposition. One case came out of the first district in 2009, Brass and Framwick v. Safeway. And in that case, the employer disputed, actually got a medical opinion saying that this injury was not work-related, and they changed the attendance coding and terminated the employees based on their dispute of her worker's compensation claim. The first district said that you cannot terminate a person based solely on the determination that they were disputing the worker's compensation case. Also, this district, in Clark v. Owen, the employer did some investigations, suspected the plaintiff was malingering, and fired her. And this court held that an employer may not discharge an employee on the basis of a dispute about a compensable injury. An employer that fails to heal this rule subjects itself to retaliatory discharge actions under Kelsey. Summary judgment was entered in favor of the employee in that case. Here we have a case where we have the defense is facially neutral, absenteeism policy, applied even-handedly, that protects us. But that's not what the evidence in this case is. The evidence in this case is that we decide whether to base points, whether to assess points, based on whether our carrier decides that this is a valid exercise of rights. We're going to allow or deny this exercise of rights. That's when the points are assessed or denied. And that's really clear in this case because Ms. Scott, their attendance policy requires them to notify them when they are accumulating points. At three levels prior to the termination level, four points, seven points, ten points, and then that thirteenth point. What happened in this case? The record's clear, she wasn't off work, you know, months at a time. She even went back and worked light duty. She was never given notice that she was at thirteen points or that she was subject to termination until that thirteen points, even though that's required. Why? Because this discretionary policy kicked in when the insurance agent said, I don't think that this is a valid claim. We're going to deny it. Oh, well, you know what? Maybe we don't want her back. They terminated her. They assessed all the points at once. How many points had she accumulated when this determination was made? Thirteen. They were accumulated for all the way back to when the company doctor took her off. So the March 22nd through 23rd. And that's presumably why she was not given the notice requirement. Right. But then she came back and she worked some light duty. Those points weren't assessed at that time. They weren't assessed because the insurance agent hadn't decided that they didn't think the claim was valid. And they hadn't had the discussion that, yeah, you know, we don't think this is a valid exercise of rights. It's okay. Go ahead and point her out. And that's what happened. She was assessed. But they didn't talk about whether it was a valid exercise of rights. I mean, the insurance company just brought a valid claim. Well, that's, I mean, I guess a claim is an exercise of rights. Or a compensable claim. I claim time off work. This looks like a positional risk type situation. She turned her head or something and they said the same thing could have happened to her anywhere. And so there was a dispute about that. Right. This is a case at Walgreens. They do split case stocking. And so they're on a line and things are coming down the line. And they're grabbing things and they're putting things into totes. And their job is to put all the different products into the totes so that they can be shipped out to the various stores. So the dispute was, well, she wasn't at any greater risk being on an assembly line than she would anywhere else. But that's a trial, obviously. Well, I infer that they didn't bear out to that because they paid the claim. But that was the basis for the denial of this claim. Can we draw that inference you just made, because they paid the claim that it's covered by comp, based on the terms of the settlement agreement? I think so. I mean, it wasn't $500. It wasn't $1,000. It was all of the medical bills. It was all of the TTD claims. And it was permanent partial disability. But that is different than the settlement document that your client signed. I mean, she signed that there was still a dispute as to the amount. She signed that it was disputed, that they were paying this on a disputed basis. That's language that everybody would use. Do you think it would be a good public policy to say every time a case is settled that meant the defendant was liable? Or we could hold that as an evidentiary point. It sounds like it would kind of make settlements less likely if we accept your position. I think that, no, I agree with that. I haven't exactly ever gotten a defendant to say, I'm going to agree that this is all my fault when they fill a case. They're not going to do that. And so that's why I'm saying that I don't think that that is the sticking point in this case. They internally made a decision that was the province of the industrial commission. At that point of determination, that decision was retaliatory, way back before we ever got. Now, had they waited until the commission made a decision and then applied their policy, we might have a different situation here. She was terminated before she ever could get her date in court because they decided that her claim, an adjuster, decided her claim wasn't valid, we don't need her here anymore. And I think that what the settlement contract says or what my client had to do to survive months down the road doesn't go to their motive at the time of termination. Their motive at the time of termination was, we don't think this is a valid exercise of rights. They're interjecting themselves into her exercise of rights, and that did form the basis of this termination. I should know this, but when did she file her petition for workman's compensation benefits? Her application, I know that she didn't see our office, and I believe that's until after the claim was denied and she was terminated. And I believe we were the ones that filed the application for adjustment of claim. But it was clear and admitted at trial that she was exercising her rights under the Comp Act because she did claim a work injury, she did fill out the report, she did make those assertions. And so once the claim was denied, she did file that claim, and she notified them that she was exercising her rights under the Act. This policy interjecting, the employer interjecting themselves into the validity of the claim, not notifying a client that they're being appointed for workers' compensation absences, workers' compensation absences, many of which were documented by the company doctor, shows that this was a retaliatory motive. This was an improper termination. This is the type of termination that is the same that was in Grabs, the same that was in Clark, and I believe that this is something that she should have been protected against. This isn't an even-handed, neutral attendance policy. They're in there picking and choosing who they want to keep, who they don't want to keep, based on what they believe merits the claim law. And that is a problem that is exclusively reserved to the commission. We're asking that the decision be reversed. Thank you. Counsel. Mr. Carnight. Thank you, Your Honor. It's a good afternoon now instead of good morning. I may have to use the court, Shane Carnight, on behalf of the defendant, Natalie Walgreens Company. The plaintiff claims she was terminated from employment in retaliation for filing a workers' compensation claim. But we really haven't heard any evidence about what the defendant's motive would have been. The question for the trial court was did Walgreens have a retaliatory motive in firing the plaintiff. And after a bench trial, the trial judge found that the plaintiff did not meet her burden of proof. The plaintiff could not show causation. Do you accept that she was the time she missed was because of a claimed workers' compensation injury? Judge, some of the time that she missed. Well, I know there were two days with the flu or whatever. But, I mean, from the time that she turned her head or whatever, claimed this injury on the job. I mean, there's no doubt that it wasn't disputed that she claimed she was hurt on the job. Is that right? Yes, sir. All right. Now, the carrier for Walgreens and Walgreens certainly had the right to take a position and say, we don't think this is compensable, even though it happened at work, on positional risk or whatever. Yes, Your Honor. And that's what they did. Why doesn't she have the same right to assert her rights and say this is a valid claim? And that's not, I agree with you, Judge, but that's not really the issue in front of the court today. The exact nature of the injury, whether it is or is not compensable under the Workers' Compensation Act, is not before this Court, and it could not be before this Court because it was not before an arbitrator, it was not before the industrial commission, and it was not before the trial judge. So we would be short-circuiting the processes set up if we look at was the injury compensable, was it covered? Well, you do agree then that it doesn't matter whether it was ultimately compensable. The issue is, was she terminated in retaliation for exercising rights that she had under the Workers' Compensation Act? Yes, Your Honor. And the defendant's answer to the complaint, I think, concedes that it was within the course and scope of employment. But that would not be the end of the story, and I don't think that the end of the story makes a difference of the defendant's motivation. It does not make a difference of causation of the plaintiff's verbal proof. Okay, let me make sure I understand what the facts are, though. My understanding is that under Walgreen's policy, if the insurance carrier accepts the claim, they don't assign points for time off. If the insurance carrier denies the claim, then the points count in the person's subject determination. Yes, Your Honor. An injury can occur in a couple different ways where a work absence, and it's really a no-fault policy. And so it may be that the person, the employee, just doesn't show up for work. It may be that they have a hangover and they don't come in. It may be that they flew and they don't call, or it's a work injury. And so that's where the split would be between the two types of injuries. And once we go down the path of work injury, then yes, Your Honor, I agree that that's an accurate summary of the policy, that Walgreen's would wait for the insurance company, the insurance carrier, to make a determination of whether it is a work-related and, therefore, covered injury. But that determination made by the insurance carrier doesn't in any way have anything to do with whether or not the worker is exercising rights granted under the Workers' Compensation Act to claim a work injury. Do you understand what I'm getting at? I think so, Judge. Okay. Do you agree with that? Yes. Okay. And really, I think that what we have to keep in mind today is the standard of review that this court has. This court asks whether the opposite result of what happened in the trial court is clearly evident. And since the lower court's judgment was not against the manifest weight of the evidence, then this court should affirm. So that is the standard of review that I believe the court should employ. So the plaintiff worked for Walgreen's as an at-will employee for only five months, and she was fired for violating the attendance policy. The law is very clear that where you have an employee that's absent from work, the employer can reprimand the employee, can have an attendance policy, and can enforce the attendance policy. And that's true even if the absence is caused by a work injury. The plaintiff was hired in December of 2003, and she missed work within a couple weeks. I don't know if that has been brought to the court's attention yet, but that's why I wanted to answer your question, Justice Stewart. But there were other absences. And so when she missed work within a couple weeks, she was put on probation, basically. And she was then given a second-chance agreement. And she knew what the policy was. She knew if she was absent that she could rack up these points. Is there a requirement that the company notify the person about the level of points that they get? To say that after three or after seven or after ten, they've got to be notified about that, that you're getting close to termination level? That suggestion has been made in the plaintiff's brief, but I do not think that the record adequately developed that. And I don't think that that point could affect the manifest weight of the evidence. I know that suggestion has been made that when an employee hits different numbers that they may be given notice, but this is not a due process sort of claim, and it has no bearing on the manifest weight of the evidence. So I'm not quite sure other than with that answer. You're telling me you're not aware that there's a written policy or standard that the company has to notify people? I've not seen that, Judge. If it's in the record, I've not seen it. But under the attendance policy, any time a person doesn't show up, they are given a point. And when the employee starts, at least this— to notify the employees that they're getting close to the magic number 13. Judge, I don't have any additional answer to that question. I guess the point here is that she eventually got 13 points. She was terminated, and I think it's also significant that she later filed a workers' compensation claim. So there's no inference of retaliation by the timing, and the plaintiff simply hasn't met her proof. Justice Donovan, you asked a few questions about the settlement contract, and I just want to point out to the court that in the blue brief in the appendix, there's the settlement contract, and it is a two-page contract, and it explains—the first page talks about how and when the injury occurred. The second page under the heading, Terms of Settlement, indicates that disputes exist between the parties as to whether the injuries were covered. It also talks about the settlement, the amount of money that was paid, and then the plaintiff gave up four of the rights. She gave up the right to arbitration. She gave up the right to an appeal. She gave up the right to further medical treatment, and she gave up any rights that she may have had to additional benefits. And, Judge Donovan, I do agree that the court cannot draw an inference from the fact that there's no language in the contract about the points. The court can't draw an inference that the defendant intended to remove the points or that the points had anything to do with the settlement. The plaintiff's claim is basically her workers' compensation benefit claim settled, and that was after the points were assessed, and that was after she was fired. But she does not bring to the court's attention any facts that would show the motivation of the defendant that it was anything other than just enforcing an even-handed policy. Her argument is basically the defendant should have taken the points off because they settled the claim. But that argument, there's just no legal basis for that argument. It's almost an argument of equities or what should have happened. That argument does not relieve her of the burden of proving causation. She still has the burden of proving causation regardless of the terms of the settlement. Well, isn't her allegation that she only got the points because the insurance carrier denied the claim? I mean, is it true that Walgreen's policy is that if it's an accepted claim, then they don't assign points for absenteeism on a workers' comp claim? Yes, sir. That is the policy. So whether or not a worker has the right to take time off work, if they're temporarily totally disabled and so forth, is determined on whether or not Walgreen's carrier decides it's a valid claim. Points would only be assessed for a work-related injury if the carrier determines that it is encompassed within workers' compensation. But whether or not the carrier makes that determination, doesn't the worker have the right to take a position just like the carrier is doing and say, I was hurt on the job? Sure. It does not affect the worker's right to file a claim. And that's the question here is whether the action taken by the defendant is in retaliation for that action. And when you have an even-handed policy that applies for everyone and there's no evidence that there are similarly situated employees who did not file a workers' compensation claim, who were treated differently, where you don't have that evidence, then it makes no difference when the policy is applied even-handedly and there's no indication that applying the policy even-handedly is a smokescreen. Well, under that kind of policy, couldn't you, couldn't a company just deny every claim and anybody who's hurt bad enough where they couldn't come to work, they'd all be terminated? Well, Your Honor, that's not the case before the forum tonight. I would hate to speculate what that policy would be since it's not the policy we have here. On page 30 of their brief, they refer to grabs versus safe way, which plaintiff's counsel mentioned in her argument. I don't think you mentioned it in your brief. If you're familiar with it, if you can distinguish that case. She seems to indicate there that defendants under a non-pretextual exception to plaintiff's retaliatory discharge claim. Seems to argue that it's similar to the case we've got here. And kind of going to the same point, I think, where Judge Stewart was just going, that that's the policy we're creating, that they're going to be able to fire anybody that was off work because of a comp injury. Judge, the case that's cited, I think it's cited for the proposition that the defendant had constructive knowledge that the plaintiff was pursuing a claim under workers' compensation and knowledge that the plaintiff may pursue a claim under workers' compensation is not the same thing as the burden that the plaintiff has to prove of the causation. The plaintiff actually cited the law directly of what they would have to prove, but the facts just aren't there to support the claim. The facts may have been there in other cases, but they're not here because to satisfy causation, the plaintiff had to affirmatively show that the termination of her employment was primarily in retaliation for exercising a protected right. And that's the point that I'm making, that we do not have the facts here in order for the plaintiff to make that burden. And given this Court's deferential standard of review here, there just is not enough evidence to say that the lower court's decision was against the manifest way of the evidence. If the policy is such that it results in people being terminated for exercising their rights under the Workers' Compensation Act, do you have to have some other evidence of motivation? I'm not following your question, Judge. Well, I mean, if the policy on its face punishes people for exercising their rights under the Workers' Compensation Act, what other motivation or retaliatory motive or whatever do you have to prove? Well, that's not really a fair characterization of the policy because the policy is a no-fault policy. The policy does not say if you miss work due to work-related injuries and you pursue your claims under the Workers' Compensation Act that we assess points. The policy is much more general. The policy is a no-fault. Points are assessed if you're absent from work. Do you agree, though, that the evidence was that people were not assigned points if the insurance company accepted their claim, but they were assigned points if the insurance company rejected their claim? Yes. Without regard to whether those two same people were exercising rights under the Act? Yes. Once we get down that avenue of where it's a broader policy than that, and you can have absences from work for different reasons, but once you get to the avenue of is it work-related, yes, Your Honor, I agree with you. Okay. But still what's missing from this case is some evidence that there are other people that had work-related injuries that did not file a claim and that were treated differently. But when you have a no-fault policy and you have no evidence of a motive, the plaintiff simply could not mean proverbial proof. Judge, the plaintiff has referred to the policy and said it's a smokescreen, but there just is no evidence of that. There just is no proof that it was anything other than a policy that a business has to have in order to reprimand people that don't come to work for different reasons. And again, I want to emphasize the standard of review. The lower court only heard from two witnesses. The plaintiff said, nobody told me they were upset with me for filing a claim. In fact, she was fired before she even filed a claim. So the plaintiff conceded that. And the only other witness was the defendant's witness. They didn't bus in a bunch of other people to talk about how the policy was used to create a result based on the company's animus or the company's motive. So we simply don't have that evidence. Is there testimony as to why they created this policy? No, Your Honor, I don't believe so. I mean, you just argued they had this policy because they had to have a reason to terminate people for being absent. Is there any evidence in the record to support what you said? Your Honor, I'm just trying to clarify that it's a no-fault policy. I'm just giving the court different examples. But I do not believe there's anything in the record. Those issues have not been briefed. What do you mean when you say it's a no-fault policy? Your Honor, I mean that it's just an accumulation of points when somebody doesn't walk through the door. So if somebody does not walk through the door to report for their 9 to 5 shift, there's just a point. It doesn't matter if their tire was flat and it wasn't their fault, for example. Any further questions? I would ask that the lower court is affirmed because the court's decision was not against the manifest way to the evidence. Thank you, Your Honor. Thank you, counsel. Rebuttal, ma'am. I just wanted to address a couple of things. First of all, defendant argues that we didn't prove her termination was causally related to her exercise of rights under the Comp Act. You gave a great definition for that in the Cod Case. I'm quoting from page 698. Cause is defined as something that precedes and brings about an effect or result. Related is defined as connected. In Clark, the undisputed fact is that she was discharged because her employer believed that her claim for benefits was not valid. Her employer admits that the discharge was connected to her workers' compensation filing, to which they believed she was not entitled. That's what happened here. Respondent decided her, I keep saying that, I'm so sorry, I apologize. Walgreens decided you're not entitled to benefits under the Comp Act. We're going to give you points. All those points are going to be assessed at once, even though I believe the attendance policy is in the record. It does say that they will be notified at all of those levels. I got the call from the adjuster. She's not entitled to benefits. Okay. Is there an employee manual in the record? I believe so, Your Honor. And does that set forth absenteeism and everything else? It does. And does it conform to opposing counsel's definition that there's a no-fault absenteeism policy? I think it sets forth the theory that Walgreens has a no-fault absenteeism policy on its face as written. But in the record, the testimony of the HR generalist explained that policy. And that policy, in reality, is not a no-fault policy. They look at whether or not a workers' compensation claim, in their opinion, is valid. And then an employee is penalized if they decide it is not valid. That's a fault system, in my opinion. That's a discretionary. There is something in the record about how other people were treated. In fact, a plaintiff in this very case accumulated points during a probationary period, which is a different policy because she was on probation at that time. That was her first 90 days of employment. She had the flu. They felt that was valid. She was kept on as an employee. There's testimony that that policy is, quote, discretionary, that termination at 13 point is not automatic, and that it is a review for termination. So, again, that point system as written in the employee handbook, well, review for termination is in the handbook. But as applied, it's very different. And we believe, and I believe the evidence in the lower court bears out that, and the case law that we refer to in our brief bears out that when an employer makes case-by-case decisions by interjecting their own opinions into the validity of a claim or an exercise of rights under the Workers' Compensation Act, that that is enough to sustain the allegation that, and the element that we necessarily have to believe. So there's evidence that other employees were treated differently in the record? That this was not applied to them? That some of their expertise were counted, some of them were not counted? Sure, yes. Was there evidence in the record that somebody was hurt at work, took time off work for a week, but did not file a claim, and was not fired? I don't believe so. Now, that would be an example of showing the reason that she was terminated because she did file a claim. If it was their policy that people got hurt at work, they were off for five days, but they didn't assess points against them because they didn't file a claim and were not fired, and then your client was because she did, that would show that they were doing it because she filed a claim. But you have no examples of that? I think it goes beyond that. No, to answer your question directly, which I'd like to do, no, there aren't examples of that. But in this case, we can look at her specific example. She was off four days to see the company doctor. When were those points assessed? Two months later, when she exercised her right to choose her own position. Why were those assessed so much later, and why was she not notified that those were going to be assessed so much later? When are they normally assessed? That exercise of rights, in my opinion, is as important as filing that file-stamped claim because now you're not allowing the employer to direct your medical care. You're getting your own opinion, you're treating with your own doctor, and suddenly we've got to look at this. When are the points normally assessed? Under the attendance policy? Yeah. They don't show up through the door? No, I mean, you said in this case they were assessed months later. The testimony in this case was when it's a work comp case, we wait for the insurance carrier to decide whether the claim was valid. When are they normally assessed? In the context of a work-proof compensation case. No, of anybody. They would be assessed at the time of the absence. So her own example would be that day or the next day or whatever. Exactly. Thank you, Counsel. Thank you. Thank you for your brief and argument. Thank the matter. I'm advised.